**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TREVAR D. TINSLEY<br>222 T Street SW<br>Tumwater, WA 98501<br><br>   *Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>   *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**(Collateral Review of Court-Martial Conviction)**

## INTRODUCTION

This is an action for collateral review of an unconstitutional conviction by a general court-martial. The case raises one issue under the Sixth Amendment Confrontation Clause: whether the military courts erred in holding that the military courts do not have the authority to either read back the constitutional exception into Military Rule of Evidence [Mil. R. Evid.] 513, or otherwise conclude that the exception still survives notwithstanding its explicit deletion. The case also raises one issue under the Sixth Amendment Confrontation Clause and the Fifth Amendment Due Process Clause: whether the military courts erred in holding that evidence of an alleged victim's prior accusation of sexual assault is admissible under the constitutional exception to Mil. R. Evid. 412 only if the accused demonstrates that the prior accusation is false.

## JURISDICTION

1. The Court has jurisdiction under 28 U.S.C. § 1331. The federal question arises under the Confrontation Clause of the Sixth Amendment, the Due Process Clause of the Fifth Amendment, and Mil. R. Evid. 513 and Mil. R. Evid. 412, which are binding provisions of the

*Manual for Courts-Martial, United States* (2016 ed.) [MCM], an Executive Order with the force of law.

## VENUE

2.  Venue is proper in this district.  28 U.S.C. §1391(e).

## PARTIES

3.  Plaintiff was a Sergeant in the United States Army.  His pay grade was E-5.  He resides at the address in the caption.

4.  Defendant is the United States and the opposing party in Plaintiff's court-martial, captioned *United States v. Tinsley*.

## FACTS

A.  The Charged Act

5.  On January 21, 2018, Plaintiff arrived in Arlington, Virginia, to attend a funeral occurring the next day at Arlington National Cemetery.

6.  While in Virginia, Plaintiff connected with Ms. AB on a social media app.  AB lived in Manassas, Virginia, approximately forty-five minutes from Arlington.

7.  AB suggested she and Plaintiff meet that night.

8.  After AB texted Plaintiff two photographs of herself, she agreed to meet him at a strip club in Crystal City, Virginia.

9.  AB arrived at the club around 10:05 pm.  Plaintiff was already there with approximately fourteen friends from the Army.

10.  AB and Plaintiff drank a bottle of champagne.

11.  AB and Plaintiff left the club and ate a late dinner at a restaurant.  She drank cider.  She felt intoxicated enough that she could not make the forty-five-minute drive home.

12. AB and Plaintiff arrived at his hotel around midnight. They entered a room where four of his friends were asleep in the two double beds.

13. AB and Plaintiff jumped on one of the beds. This action woke the bed's occupants, Mr. CS and Mr. UB.

14. CS stepped outside the room to gather his thoughts. When he returned to the room, he noticed that the lights were on and that AB and Plaintiff were in his bed in a state of undress, touching and kissing each other. AB quickly pulled the covers over her chest. CS surmised that AB and Plaintiff were about to have a "physical relationship of some degree."

15. CS told AB and Plaintiff to get their own room.

16. AB and Plaintiff exited the room and held hands as they walked down the hallway.

17. In the new room, AB set the alarm for 5:45 am because her important internship started the next morning.

18. When the alarm woke AB and Plaintiff, they kissed and fondled each other. She demanded that Plaintiff insert his penis in her mouth. He complied.

19. Plaintiff wanted to insert his penis in AB's vulva, but she wiggled away and told him "no."

20. Plaintiff asked AB to bend over the bed. She did so. AB claimed that she told Plaintiff "no," but that he penetrated her vulva with his penis. Plaintiff sensed that AB's body had tensed up. He stopped, withdrew his penis, and said, "I guess you didn't like that."

B. AB's Statements

21. AB told civilian law enforcement officers that, at the time of the alleged incident, she had been treated by a therapist for two psychological conditions and that she was taking two

prescription medications – Zoloft and Abilify – for these conditions.

22. AB also told law enforcement officials that when Plaintiff left the hotel room to reserve a room for him and her, one of the two men still in the bed touched her inappropriately.

23. During a pretrial interview with a military prosecutor, AB stated that when she told Plaintiff that one of the men touched her inappropriately, he replied, "unbelievable."

C.   The Court-Martial

24. The Government charged Plaintiff with one specification of sexual assault, in violation of Article 120 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2016). The Government alleged:

> In that [Plaintiff], United States Army, did at or near Alexandria, Virginia, on or about 22 January 2018, commit a sexual act upon Ms. [AB], by causing penetration of her vulva with his penis by causing bodily harm to her, to wit: causing penetration of Ms. [AB's] vulva with his penis without her consent.

25. Prior to trial, the defense moved to compel the production of AB's mental health records. The defense sought statements made by AB to her therapist before and after the alleged incident, including the statement she made prior to her first long interview with law enforcement officers.

26. Zoloft is an antidepressant medication used to treat, among other things, depression, obsessive-compulsive disorder, panic, post-traumatic stress disorder, and social anxiety disorder.

27. Consuming alcohol while taking Zoloft can cause a person to appear more relaxed, less inhibited, possibly more outgoing, and chattier than without alcohol. Drinking alcohol while on Zoloft is discouraged.

28. Abilify is an antipsychotic medication used to treat, among other things,

schizophrenia, autism, major depressive disorder, and manic episodes associated with Bipolar I disorder.

29. Consuming alcohol while taking Abilify can impact a person's decision-making ability.

30. Combining Zoloft, Abilify, and alcohol will amplify the effects of the medications and impact a person's cognitive functioning and memory.

31. Based on AB's statement to law enforcement officials about her psychological conditions and the medications prescribed to treat those conditions, the defense sought AB's mental health records because of the likelihood that she had a mental health condition that impacted her cognitive functioning, memory, perception, credibility, and reliability regarding the alleged incident. The defense counsel acknowledged that he did not have actual evidence that AB spoke to her therapist about the alleged incident but argued that it was likely that she did so and that the records would likely contradict the statements that AB made to the police. The defense sought AB's mental health information and treatment history and/or an *in camera* review by the military judge to determine what information should be disclosed.

32. AB invoked her psychotherapist-patient privilege under Mil. R. Evid. 513.

33. The military judge denied the motion.

34. Prior to trial, the defense also moved to admit evidence of AB's statement about an assault by another man in the hotel room, pursuant to Mil. R. Evid. 412.

35. The defense counsel proffered that the two men would deny touching AB and that admission of AB's statement was necessary to demonstrate the timeline of events and to prove AB's lack of credibility.

36. The military judge denied the motion.

37.     A general court-martial composed of officer and enlisted members[1] at Fort Bragg, North Carolina, convicted Plaintiff of sexual assault.

38.     The panel sentenced Plaintiff to reduction to the lowest enlisted grade, a reprimand, and a dishonorable discharge.

39.     A dishonorable discharge is highly stigmatizing and Plaintiff is statutorily barred from receiving any benefits from the United States Department of Veterans Affairs.

D.     Decisions by the Army Court of Criminal Appeals and the Court of Appeals for the Armed Forces

40.     Plaintiff appealed his conviction and sentence to the United States Army Court of Criminal Appeals [CCA]. The three-judge panel affirmed the findings and sentence. *United States v. Tinsley*, 81 M.J. 836 (Army Ct. Crim. App. 2021).

41.     Plaintiff argued that the military judge erred by denying the defense motion to compel production of AB's mental health records and/or an *in camera* review of these records, pursuant to Mil. R. Evid. 513, because admission or disclosure of the communication was constitutionally required.

42.     The CCA reviewed the history of the psychotherapist-patient privilege in Mil. R. Evid. 513. The rule, promulgated by the President, as are all evidentiary and procedural rules governing courts-martial, initially provided an exception for the admission or disclosure of a communication when constitutionally required. Under the pre-2015 version of Mil. R. Evid. 513, military judges generally reviewed an alleged victim's mental health records in camera under this

---

[1] Rule for Courts-Martial [R.C.M.] 502(a) provides that the members of a court-martial shall determine whether the accused is found guilty. The members are collectively known as the "panel." R.C.M. 502(b) mandates that the president of a court-martial panel shall be the highest-ranking member of the panel. The president has the same duties as the other members and shall also preside over closed sessions of the members during their deliberations and shall speak for the members when announcing the verdict or requesting instructions from the military judge.

exception as part of a balancing test to determine if the accused's Confrontation Clause rights outweighed the alleged victim's psychotherapist-patient privilege. *See* Mil. R. Evid. 513(d)(8) (2000 ed.) ("There is no privilege under this rule . . . when admission or disclosure of a communication is constitutionally required.").

43. Following the December 2014 passing of the National Defense Authorization Act for Fiscal Year 2015 [FY15 NDAA], Congress modified Mil. R. Evid. 513 to strike the current constitutional exception to the privilege. National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, 128 Stat. 3292, 3369 (2014); Exec. Order No. 13,696, 80 Fed. Reg. at 35,819 (Jun. 22, 2015) ("Mil. R. Evid. 513(d)(8) is deleted").

44. Consistent with the relevant provision of the FY15 NDAA, the President deleted the constitutional exception to Mil. R. Evid. 513. *B.M. v. United States*, 84 M.J. 314, 322 (C.A.A.F. 2024) (Ohlson, C.J., concurring) (citation omitted).

45. The CCA held that "the military courts do not have the authority to either 'read back' the constitutional exception into [Mil. R. Evid.] 514, or otherwise conclude that the exception still survives notwithstanding its explicit deletion." 81 M.J. at 849. "[A]ny 'constitutional exception' to [Mil. R. Evid.] 513 grounded in the Confrontation Clause does not exist." *Id*. at 850 (citing *Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996).

46. The CCA also held that no exception to the psychotherapist-patient privilege exists pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *Id*. at 852.

47. The CCA concluded that the military judge did not abuse his discretion in denying the motion for an *in camera* review and production of AB's mental health records. *Id*. at 854.

48. Plaintiff also argued that the military judge erred by denying the defense motion to admit evidence of the AB's accusation that another Soldier sexually abused her in the hotel room,

pursuant to Mil. R. Evid. 412, because the evidence was constitutionally required.

49. The CCA acknowledged that a military judge who applies Mil. R. Evid. 412 generally is not asked to determine if the proffered evidence is true, but nonetheless held that prior allegations of sexual assault are admissible *only* if the accused first meets his burden to show that they are false. *Id*. at 845 (citing *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017).

50. The CCA concluded that the military judge did not abuse his discretion in finding that the alleged victim's allegation that she was inappropriately touched while Plaintiff was out of the room was inadmissible under Mil. R. Evid. 412 and Mil. R. Evid. 403. *Id*.

51. Plaintiff petitioned the Court of Appeals for the Armed Forces [CAAF], the highest court in the military justice system, for review of the military judge's decision denying the motion to compel production of AB's mental health records, pursuant to Mil. R. Evid. 513, and of the military judge's decision denying the motion to admit evidence of the alleged victim's accusation that another Soldier assaulted her, pursuant to Mil. R. Evid. 412.

52. The CAAF denied review. *United States v. Tinsley*, 2022 CAAF LEXIS 392, 82 M.J. 372 (C.A.A.F. 2022) (order denying review).

53. Under the law in effect at the time of Plaintiff's petition to the CAAF, the Supreme Court lacked jurisdiction to review any case, such as Plaintiff's, in which the CAAF denied a petition for review. 10 U.S.C. § 867a(a).

## CAUSES OF ACTION

### Count I – Constitutional Exception to Mil. R. Evid. 513

54. The averments of ¶¶ 1-33, 37-47, and 51-52 are incorporated herein by reference.

55. The Sixth Amendment's Confrontation Clause applies to courts-martial.

56. The new version of Mil. R. Evid. 513 cannot prevail over Plaintiff's Constitutional

8

right to confront the alleged victim.

57.     Because the CCA erroneously held that there is no Confrontation Clause exception to the psychotherapist-patient privilege in Mil. R. Evid. 513 and the CAAF erred in denying review of this issue, Plaintiff's conviction and sentence violated the Sixth Amendment and are invalid.

### Count II – Mil. R. Evid. 412 Evidence Was Constitutionally Required

58.     The averments of ¶¶ 1- 24, 34-40, and 48-52 are incorporated herein by reference.

59.     The Sixth Amendment Confrontation Clause applies to courts-martial.

60.     The Fifth Amendment Due Process Clause applies to courts-martial.

61.     Evidence of AB's accusation of sexual abuse by another Soldier in the hotel room was relevant, material, and favorable to the defense and the probative value of the evidence outweighs the dangers of unfair prejudice.

62.     Evidence of AB's accusation of sexual abuse by another Solider in the hotel room was necessary to present a defense.

63.     Because the CCA erred in concluding that Plaintiff had to prove the falsity of AB's accusation to be admissible under the constitutional exception to Mil. R. Evid. 412 and the CAAF erred in denying review of this issue, the conviction and sentence violated the Sixth and Fifth Amendments and are invalid.

### RELIEF REQUESTED

64.     Plaintiff prays that the Court enter judgment –

(a) declaring that his conviction and sentence were obtained in violation of the Sixth and Fifth Amendments;

(b) ordering that his conviction and sentence be expunged and that all rights, property, and privileges of which he has been denied by reason of the conviction be restored; and

  (c) granting such other and further relief as may in the circumstances be just and proper.

                   Respectfully submitted,

                   /s/ *William E. Cassara*
                   WILLIAM E. CASSARA
                   D.C. Bar No. GA0034
                   William E. Cassara, PC
                   PO Box 2688
                   Evans, GA 30809
                   (706) 860-5769
                   bill@courtmartial.com
                   Attorney for Plaintiff

October 21, 2024

Serve:   Attorney General of the United States
       United States Attorney for the District of Columbia
       Secretary of the Army